EULALIO RODRIGUEZ v. THE STATE.

No. 22573. Delivered June 23, 1943.

The opinion states the case.

*Roy A. Scott* and *Leo N. Duran,* both of Corpus Christi, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for an assault with intent to murder. The punishment assessed is confinement in the State penitentiary for a term of two years.

Appellant presents three questions for review. The first relates to the court's action in declining to peremptorily instruct the jury to acquit him. The second relates to the court's

action in permitting the District Attorney to introduce in evidence the ordinance of the City of Kingsville which authorizes the policemen of said city to arrest, without warrant, "any persons found in suspicious places or under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace or threaten or are about to commit some offense against the laws." The third question relates to the charge of the court in instructing the jury that "it is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose he should use all lawful means. He shall, in every case, where he is authorized by law, interfere without warrant to prevent or suppress crimes and arrest offenders, if any, in order that they may be taken before the proper magistrate or court and be tried." As to whether or not the court committed any error with respect to any of the contentions depends largely upon the facts proven on the trial.

The first question to be considered is whether or not the arrest was illegal, and whether or not the court should have so instructed the jury. This question necessarily requires a review of the evidence introduced. The State's evidence, briefly stated, shows that about 8:45 P. M., on December 6, 1942, the prosecuting witness, a policeman of the City of Kingsville, while riding in an automobile with three other officers, was stopped by a man on the street; that he had a conversation with this person and as a result thereof the officer went to the Chat & Chew Cafe; that after he entered the same, the bartender nodded his head in the direction of some men who were sitting at the counter drinking beer, one of whom was a sailor and the other was the appellant; that the officer tapped appellant on the shoulder and told him that he was under arrest; that as he started out of the door with the appellant, the appellant preceded him; that when they got on the outside appellant stabbed him and then ran away; that at the time of the appellant's arrest the officer had no warrant, nor had he been informed that appellant had committed a felony, or that he was then committing a breach of the peace; that everything was peaceable and quiet inside of the cafe. The arresting officer further testified that at the time in question he was wearing a policeman's uniform, a badge, and a pistol in his holster which was strapped to his side. Soon after the occurrence appellant was arrested at his home by the sheriff, who obtained a confession from him which was introduced in evidence by the State and in which appellant stated in substance that within a few minutes after he sat down at the counter to drink some beer, a policeman came in, caught him by the arm and said, "Come

with me"; that just as they were coming out the door of the cafe he turned, stabbed the policeman and then ran home; that his reason for stabbing him was that he got mad "because he did not take the other boys." Appellant took the witness stand and testified that he did not know the policeman; that he had never seen him before; that when they got on the outside he stabbed him for the purpose of getting away from him; that he did not look around to see whom he had stabbed. He knew, however, that he walked out with the man who tapped him on the shoulder and told him, "Come with me."

From the foregoing brief statement of the evidence, it is obvious that the arrest of the appellant was illegal. Having reached the conclusion that the arrest without a warrant was not authorized under either of Articles 212, 213 or 215, C. C. P., or the ordinance of the City of Kingsville, therefore the court erred in not so instructing the jury. See Johnson v. State, 5 Tex. Cr. App. 43; Satterwhite v. State, 17 S. W. (2d) 823; Williams v. State, 64 Tex. Cr. R. 491; King v. State, 131 Tex. Cr. R. 443, and Miers v. State, 34 Tex. Cr. R. 161. In the latter case, Presiding Judge Hurt, speaking for the court, said: "That the arrest was illegal is not questioned. The court so instructed the jury. Being an illegal arrest, what were the rights of the accused under the circumstances? Being without capias, in this case, the deceased, a constable, had no right to arrest the appellant, and in making the arrest was a trespasser, and the appellant had the right to resist by force, using no more than was necessary to resist the unlawful acts of the officer. An officer who acts without proper authority, and the person doing the same act who is not an officer, stand on the same footing; and any third person may lawfully interfere to prevent an illegal arrest, doing no more than is necessary for that purpose."

In the case of Satterwhite v. State, supra, the court said: " 'It is essential, to justify such an arrest, that the offense committed shall amount to a breach of the peace, that such offense shall be actually committed or attempted in the presence of the person making the arrest, and that the arrest be made at the time when the offense was committed * * *' (5 Corpus Juris, p. 413). It has been held that the right to make an arrest in cases of breaches of the peace is confined to the time of the commission of the offense."

Appellant's next contention is that the court erred in declining to give a requested instruction to the jury to acquit him. This request was apparently based on the theory that his arrest

was illegal, and being so, he had the legal right to resort to the means employed to extricate himself from such illegal arrest. Conceding that the arrest was illegal, still the question remains, did he immediately resort to a greater force than was reasonably necessary under the circumstances then existing to extricate himself from such illegal arrest? If so, he would still be guilty of some character of an assault; hence he was not entitled to the requested instruction.

This brings us to the question relating to the introduction in evidence of the ordinance of the City of Kingsville. Inasmuch as there was not any evidence showing that appellant was in a suspicious place and under circumstances which reasonably showed that he had been guilty of some felony or a breach of the peace or threatened or was about to commit some felony against the laws, which authorized his arrest, the ordinance was not admissible in evidence because it served no useful purpose.

Appellant in due time addressed a number of objections to the court's charge, some of which are without merit and need not be discussed. Others, however, demand our consideration. Appellant objected to the court's charge because it did not affirmatively apply the law to the facts, and specifically objected to the following instruction:

"It is the duty of every peace officer to preserve the peace within his jurisdiction. To effect this purpose, he shall use all lawful means. He shall, in every case, where he is authorized by law, interfere without warrant to prevent or suppress crime and arrest offenders, if any, in order that they may be taken before the proper magistrate or court and be tried."

This is but a pronouncement of the law relating to the duty of peace officers in the discharge of their legal duties in the manner prescribed by law. It is but an abstract legal proposition without any application thereof to the facts. Consequently, it tended more to confuse than to enlighten the jury, who are to pass on the appellant's guilt and the grade of his offense, if any. See Cortez v. State, 161 S. W. (2d) 495.

The appellant, in Paragraph 13 of his exceptions to the court's charge, made the following objection: "Defendant excepts and objects to the Court's main charge as a whole for the reason that nowhere in said charge does the Court instruct the jury that even though they found that the defendant stabbed or cut Joe Passant, if he did do so, and at the time his temper

was aroused and that he acted and was motivated by anger, rage or sudden resentment, which rendered the mind incapable of cool reflection, and that the said arrest produced such condition in the mind of the defendant and that he stabbed Joe Passant while in such condition of mind, to find the defendant not guilty."

While appellant would not, under the facts stated in the objections to the court's charge, have been entitled to an acquittal, yet, in our opinion, it was sufficient to direct the court's attention to that phase of the case which required an instruction with reference thereto. The arrest being illegal, it constituted a trespass and is regarded as a great provocation, and if this created in the mind of the appellant such anger, rage, sudden resentment or terror, sufficient to render the mind of a person of ordinary temper incapable of cool reflection, and while in such a frame of mind he cut or stabbed the officer, Joe Passant, with an intent to kill, he would, nevertheless, be guilty of an assault with intent to murder without malice. However, if he did so without any intent to kill but used a deadly weapon or inflicted upon the officer serious bodily injury, he would be guilty of aggravated assault and battery. On the other hand, if, while his mind was incapable of cool reflection produced by adequate cause, he stabbed the officer with no intent to kill, without the use of a deadly weapon and without inflicting any serious bodily injury, he would be guilty of a simple assault. Whether or not the weapon used was a deadly one depends upon the instrument and the manner of its use; and whether or not the injury inflicted was of a serious nature would likewise depend on the evidence introduced. We think these issues were raised by the evidence and were proper subjects to be considered and passed on by the jury under proper instructions from the court.

From what we have said, it follows that the judgment of the trial court should be reversed and the cause remanded, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.