## ALVIN MIXON V. STATE.

No. 31,047. November 25, 1959.
State's Motion for Rehearing Overruled January 13, 1960.

*Billy Hall,* Littlefield, for appellant.

*Bill Sheehan,* District Attorney, Friona, and *Leon Douglas* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is assault with intent to murder with malice; the punishment, two years.

Appellant and the assaulted party were farmers who resided near Amherst in Lamb County. Appellant's son, Jack, was 24 years of age, and the son of Arlis Humphrey (the assaulted party) was 18. Some time before the day in question Arlis' son had borrowed a pair of water skis and some bridle bits, belonging to appellant and his son Jack, without having gotten their consent. When these articles were missed, appellant secured the services of a constable in effecting their return. Arlis took umbrage over the appellant's having "gone to the law" and on the day prior to the assault in question, Arlis encountered appellant at a filling station and, in the presence of those assembled including Arlis' brother, gave the appellant a sound cursing and invited him out to fight. This invitation the appellant declined because of some temporary physical injuries, and the gathering dispersed after the parties had agreed to meet again

the next day when Jack would be present so that certain misunderstandings concerning what Jack had said could be ironed out. On the following morning appellant and Jack went to Amherst, made inquiry as to Arlis' whereabouts, and proceeded to the cafe where they learned he was to be found. Upon arrival, appellant remained in his automobile and Jack entered the cafe and asked Arlis and his brother Jim to step outside and talk. As to what followed, there is a conflict in the evidence. Arlis testified that he and Jack stopped in front of the cafe and Jack asked him if he and Jim had ganged up on his father on the preceding day, which question he answered in the negative. He stated that about this time the appellant got out of his automobile, pumped the shotgun which he had in his hand, and approached them saying "You whey-bellied s――o――b――――, I am going to kill you. Jack, step back." At which time he (Arlis) threw his arm around Jack's shoulder and Jack made no effort to move. As to the position of the gun, Arlis testified "He pulled that gun up in mine and Jack's belly." He stated further that appellant raved and hollered around there for about five minutes and then finally calmed down and went to his automobile where he put away the gun. The gun was not fired nor did appellant attempt to fire the same.

Appellant testified that his son Jack and Arlis came out of the cafe, that Arlis made a threatening gesture toward Jack, that he then got out of his automobile, shotgun in hand, approached the two and spoke to Arlis, who by this time was holding Jack, and told him to turn Jack loose. As to the direction in which he was pointing the shotgun, he said "I might have got the gun up to that angle. I never did bring the gun up to my shoulder." Elsewhere in his testimony he denied that he released the safety on the gun, pumped it or pointed it at either Arlis or his brother. He stated that he went to the scene in accordance with the agreement made with Arlis on the preceding day and that he carried the gun for his and his son's protection. He admitted that he said "Before you and Jim run over me and my family, I will kill both of you" but denied that he made the statement attributed to him by Arlis.

Jack corroborated his testimony.

The testimony of the other witnesses varied in some degree from that of the two principal actors set forth above. Some of the state's witnesses testified that appellant did not point the gun at Arlis.

In addition to the question of the sufficiency of the evidence to support the conviction, we are confronted with the failure of the court, over proper objection, to charge on simple assault.

In Jackson v. State, 90 Texas Cr. Rep. 369, 235 S.W. 882, the assaulted party (Scroggins) testified that the accused pointed a shotgun at him, cocked the same, and demanded that he make an apology to Mrs. Jackson, which he promptly made. The accused testified that he had the gun on his person for protection because he believed Scroggins to be armed, but denied that he pointed the gun at Scroggins. Jackson reviews the cases on the question and is authority for the rule that where an issue of fact is made as to whether or not the gun was pointed at the assaulted party, a charge on simple assault should be given.

Jackson is here controlling and calls for a reversal of this conviction.

The judgment is reversed and the cause is remanded.